# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**UNITED STATES OF AMERICA**

**v.**                                              **Case No. 3:17cr070/MCR**

**TERRELL JEROME COCHRAN.**

_____/

## ORDER

On October 4, 2017, Defendant Terrell Jerome Cochran pled guilty to one count of possession with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii), and one count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). Cochran's Presentence Investigation Report classified him as a career offender and assigned him an enhanced base offense level of 37, pursuant to U.S.S.G. § 4B1.1, based on two prior convictions in the state of Georgia: (1) one for possession with intent to distribute cocaine; and (2) one for robbery. The resulting Guidelines range was 262 to 327 months. Cochran objected to the career offender classification, arguing that his prior robbery conviction does not qualify as a "crime of violence" for purposes of the career offender enhancement. At sentencing, the Court agreed

with Cochran and rejected the enhancement.[1]  This Order memorializes and further

explains that ruling.

## I.    Legal Standard

All sentencing proceedings must begin with a correct calculation of the

applicable Guidelines range.  *Peugh v. United States*, 569 U.S. 530, 536 (2013).  In

calculating this range, district courts are required by U.S.S.G. § 1B1.1 to first

determine the base offense level, and then make appropriate upward or downward

adjustments.  *See also United States v. Booker*, 543 U.S. 220, 319 (2005).  At issue

in this case is § 4B1.1, which calls for an enhanced base offense level of 37 for a

defendant who, in addition to other requirements not challenged here, has at least

two prior felony convictions of either a crime of violence or a controlled substance

offense.  The parties agree that Cochran's prior conviction for possession with intent

to distribute cocaine qualifies as a controlled substance offense for purposes of

§ 4B1.1.  The only dispute is whether Cochran's prior Georgia robbery conviction

qualifies as a "crime of violence."

A "crime of violence," for purposes of § 4B1.1, is any crime punishable by

imprisonment for a term exceeding one year that either: (1) has as an element the

use, attempted use, or threatened use of physical force against the person of another,

---

[1] Cochran was sentenced to a mandatory minimum term of 120 months.

or (2) is one of a list of enumerated offenses, including robbery. U.S.S.G. §§ 4B1.1 cmt. n.1 (referencing § 4B1.2's definition), 4B1.2(a). The first prong of this definition is commonly referred to as the elements clause and the second prong as the enumerated clause. *In re Hires*, 825 F.3d 1297, 1298-99 (11th Cir. 2016). A prior conviction need only qualify under one of these alternative clauses to constitute a "crime of violence."

To determine whether a prior conviction qualifies as a "crime of violence," sentencing courts inquire into the nature of the crime of conviction, rather than into the defendant's underlying conduct in committing the offense. *See Mathis v. United States*, 136 S. Ct. 2243, 2251 (2016). In making the determination, courts must first examine the statute of conviction using a categorical approach, looking only to the elements of the offense and the generic definition of a "crime of violence." *See Descamps v. United States*, 570 U.S. 254, 257 (2013); *United States v. Howard*, 742 F.3d 1334, 1345 (11th Cir. 2014). Under this approach, courts must assume that the defendant's conviction "rested upon nothing more than the least of the acts criminalized" by the statute and determine whether, in all instances, those acts constitute a "crime of violence" under § 4B1.2. *See Howard*, 742 F.3d at 1345. If so, then the offense categorically qualifies as a career offender predicate and the inquiry ends there. *Id.* If not—that is, if the statute criminalizes "a broader swath of conduct" than is covered by § 4B1.2's definition of a "crime of violence"—then

the offense cannot categorically qualify as a career offender predicate, even if the particular facts underlying the defendant's own conviction might satisfy the definition. *See Descamps*, 570 U.S. at 258.

"In most cases, the categorical approach should be the beginning and end of the analysis." *United States v. Estrella*, 758 F.3d 1239, 1245 (11th Cir. 2014). However, in a "narrow range of cases" where the statute of conviction is divisible— that is, where it is "disjunctive[ly] phras[ed]" and lists multiple alternative elements of functionally separate crimes, as opposed to various factual means of committing the same element of a single crime—and at least one, but not all of the criminalized acts constitutes a "crime of violence," sentencing courts employ a "modified categorical approach" to determine whether the statute qualifies as a career offender predicate. *Mathis*, 136 S. Ct. at 2249, 2253; *see also Estrella*, 758 F.3d at 1245. The modified categorical approach allows courts to examine a limited class of documents, in addition to the statute and the fact of conviction, "to determine what crime, with what elements," formed the basis of the defendant's prior conviction. *Mathis*, 136 S. Ct. at 2245. These documents, known as *Shepard* materials, include the charging document, jury instructions, a written plea agreement, a transcript of a plea colloquy, and "any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005). Importantly, the modified categorical approach retains the categorical approach's focus on the

elements of the underlying crime, and not the facts. *See Descamps*, 570 U.S. at 263. After identifying the statutory elements of the crime for which the defendant was convicted, courts must "decide whether the least of the acts criminalized by that statutory phrase (instead of whether all of the acts criminalized by all of the statutory phrases)" constitutes a "crime of violence." *See United States v. Davis*, 875 F.3d 592, 598 (11th Cir. 2017).

In ascertaining the scope of conduct criminalized by the elements of an offense, sentencing courts consider not only the statutory language, but also the interpretation given to that language by appropriate state appellate courts, which is binding. *See United States v. Davis*, 875 F.3d 592, 597 (11th Cir. 2017); *see also United States v. Braun*, 801 F.3d 1301, 1303 (11th Cir. 2015) ("We are bound by federal law when we interpret terms in the ACCA, and we are bound by state law when we interpret the elements of state-law crimes."); *Estrella*, 758 F.3d at 1249 n.4 (explaining that "the question we are answering here is whether those elements as defined by state law, including state court decisions," qualify for a federal sentence enhancement); *United States v. Rosales-Bruno*, 676 F.3d 1017, 1021 (11th Cir. 2012) ("[W]e look to [state] case law to determine whether a conviction under [a state statute] necessarily involves the employment of 'physical force' as that term is defined by federal law."). To find an offense overbroad, there must be a "realistic probability, not a theoretical possibility" that the statute would be applied to conduct

not encompassed by the "crime of violence" definition.  *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007); *accord United States v. McGuire*, 706 F.3d 1333, 1337 (11th Cir. 2013) (applying the "realistic probability" standard to the "crime of violence" determination under 18 U.S.C. § 924(c)(3)).

## II.   Analysis

Cochran argues that his Georgia robbery conviction does not qualify as a "crime of violence" under either the elements clause or the enumerated clause of § 4B1.2.

### A.   Elements Clause

Under Georgia law, a robbery occurs "when, with intent to commit theft," an individual "takes property of another from the person or the immediate presence of another: (1) [b]y use of force; (2) [b]y intimidation, by the use of threat or coercion, or by placing such person in fear of immediate serious bodily injury to himself or another; or (3) [b]y sudden snatching." *See* Ga. Code Ann. § 16-8-40(a).  To date, the Eleventh Circuit has not addressed whether a Georgia robbery conviction under this statute constitutes a "crime of violence" for purposes of § 4B1.1 or any other similarly-worded statute or sentencing guideline.  Thus, this Court's first task is to apply the categorical approach to determine whether the least of the acts criminalized by the statute necessarily has as an element the use, attempted use, or threatened use of physical force against the person of another.  *See Descamps*, 570 U.S. at 257.

Physical force, in this context, means "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (defining the term "violent felony" for purposes of the Armed Career Criminal Act).[2]

Sudden snatching is the least of the three acts by which a defendant can commit robbery under Ga. Code Ann. § 16-8-40. The Georgia Supreme Court has explained that robbery by sudden snatching "occurs where no other force is used than is necessary to obtain possession of the property from the owner, who is off guard, and where there is no resistance by the owner or injury to his person." *Edwards v. State*, 224 Ga. 684, 686 (1968); *see also King v. State*, 214 S.E.2d 645 (Ga. App. 1994) (same). While the victim must be conscious of the theft before it is complete, the property need only be taken from the victim's immediate presence, which "extends well beyond his person or his reach," *Smith v. State*, 635 S.E.2d 385, 386 (Ga. App. 2006), to virtually any "object . . . under his control or responsibility," so long as "the victim was not too far distant," *Perkins v. State*, 568 S.E.2d 601, 602 (Ga. App. 2002) (citing *Welch v. State*, 235 Ga. 243, 245 (1975) (immediate presence shown where property taken was in another room more than 15 feet from victim at

---

[2] The definition of "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B), is "virtually identical" to the definition of "crime of violence" under U.S.S.G. § 4B1.1, "so that decisions about one apply to the other." *Gilbert v. United States*, 640 F.3d 1293, 1309 (11th Cir. 2011).

time of taking)). *See also Meyers v. State*, 547 S.E.2d 781 (Ga. App. 2001) (theft of purse 30 feet away from victim "was not too far afield to be outside [the victim's] immediate presence"). Applying these principles, Georgia appellate courts routinely affirm robbery by sudden snatching convictions in cases involving substantially less force than that capable of causing physical pain or injury.[3] *See, e.g.*, *Brown v. State*, 710 S.E.2d 674 (Ga. App. 2011) (affirming conviction for robbery by sudden snatching where defendant took the victim's wallet out of a shopping cart while the victim was several feet away and the victim yelled for defendant to stop); *King*, 214 S.E.2d at 646-47 (affirming robbery by sudden snatching conviction where defendant grabbed six cartons of cigarettes off a checkout counter and ran out of the store while the clerk's back was turned); *Holmes v. State*, 270 S.E.2d 327 (Ga. App. 1980) (affirming robbery conviction where defendant "came up to [the victim] to ask directions and while she was giving them[, he] snatched her purse and ran with it"). Thus, Georgia robbery by sudden snatching does not require proof, as a necessary element, that the defendant "used, attempted to use, or threatened to use"

---

[3] In this regard, Georgia's robbery statute differs from Florida's robbery statute, which the Eleventh Circuit has repeatedly concluded—most recently, albeit with some reservation—is a "violent felony" under the ACCA. *See United States v. Lee*, Nos. 16-16590 & 16-16591, --- F.3d ---, 2018 WL 1573347, at *3 (11th Cir. 2018) (stating that a sitting panel is "not free to evaluate the substantive correctness or current viability" of prior panel precedent). This is because, under Florida law, "in order for the snatching of property from another to amount to robbery . . . there must be resistance by the victim that is overcome by the physical force of the offender." *See id.*, 2018 WL 1573347, at *1 n.2. Neither of these circumstances must be present for a sudden snatching to amount to robbery under Georgia law. *See Edwards*, 224 Ga. at 686; *King*, 214 S.E.2d 645.

violent, physical force. Accordingly, Ga. Code Ann. § 16-8-40 cannot categorically

qualify as a "crime of violence" under the elements clause of U.S.S.G. § 4B1.2.

The Court next analyzes whether the statute is divisible. Again, a statute is

considered divisible where it lists multiple, alternative elements, thereby creating

multiple, separate offenses in a divisible statutory structure. *Mathis*, 136 S. Ct. at

2249; *see also United States v. Gundy*, 842 F.3d 1156, 1162 (11th Cir. 2016). In

contrast, a statute is considered indivisible where its alternative phrasing

"enumerates various factual means of" satisfying one or more of the statute's

otherwise indivisible set of elements. *Mathis*, 136 S. Ct. at 2256; *see also Gundy*,

842 F.3d at 1162. Thus, to determine whether Ga. Code Ann. § 16-8-40 is divisible,

the "threshold inquiry" is whether its listed items—*i.e.*, the three methods of

committing robbery under Georgia law—are elements or means. *See Mathis*, 136 S.

Ct. at 2256.

Sentencing courts are instructed to employ several tools for discerning

"elements" from "means." First, "the statute on its face may resolve the issue." *See

id*. at 2256. For example, where "statutory alternatives carry different punishments,

then . . . they must be elements." *See id*. Conversely, if a statutory list is drafted to

offer "illustrative examples, then it includes only a crime's means of commission."

*Id*. Second, if a precedential state court decision makes clear that a statute's

alternative phrasing lists alternative methods of committing a single offense, such

that "a jury need not agree" on which alternative method the defendant committed in order to sustain a conviction, then the statutory alternatives are means. *Id*. Finally, where state law does not clearly resolve the question, sentencing courts should look to "the record of [the] prior conviction itself . . . for the sole and limited purpose of determining whether the listed items are elements of the offense." *Id*. at 2256-57. This is because record materials—including indictments, jury instructions, plea colloquies and plea agreements—will "often reflect the crime's elements and so can reveal, in some cases better than state law itself, whether a statutory list is of elements or means." *See id*. at 2257 n.7. If these tools do not resolve the question, then the sentencing court will be unable to determine with "certainty" that the listed items in a statute are elements, rather than means. *See id.* at 2257. Without that certainty, a conviction under the statute cannot qualify as a "crime of violence." *See id*.

The Court begins, as *Mathis* instructs, with the text of Ga. Code Ann. § 16-8-40. *See id*. at 2256 ("[A] statute may itself identify which things must be charged (and so are elements) and which need not be (and so are means)."). Nothing in the plain language of this statute clarifies whether the five alternatives are elements or means. Nor does the statute explicitly state whether a jury could return a conviction without agreeing unanimously on a particular alternative. Moreover, because all of the alternatives carry the same punishment, the Due Process Clause does not require

that any such unanimous agreement be reached. *See id*. (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

Next, the Court turns to state decisional law, which, in this case, provides much clearer guidance. Several precedential state court decisions explicitly state that Georgia's robbery statute articulates alternative methods or means of committing the offense, rather than alternative elements of functionally separate crimes. For example, in *Nelson v. State*, cited by the Government, the Georgia Supreme Court stated that "the offense of robbery may be committed by three *methods*." 203 Ga. 330, 337 (1948) (emphasis added). The Georgia Court of Appeals has characterized the robbery statute in those same terms. In *Hogan v. State*, for example, the Georgia Court of Appeals stated that "*the* crime of robbery requires proof that one, with intent to commit theft, took property from the person or immediate presence of another by employment of one of the various alternative means enumerated in" Ga. Code Ann. 16-8-40. 343 S.E.2d 770, 771-72 (Ga. App. 1986). Similarly, in *Kilpatrick v. State*, the Court of Appeals again explained that the statute "outlines . . . alternative ways in which a person can commit *the* offense of robbery." 618 S.E.2d 719, 720 (Ga. App. 2005). Importantly, the Supreme Court has directed that "[w]hen a ruling of [this] kind exists, a sentencing judge need only follow what it says." *See Mathis*, 136 S. Ct. at 2256.

This reading of Georgia law is consistent with Georgia's Suggested Pattern Jury Instructions, which identifies three "essential elements of the [robbery] offense that the State must prove beyond a reasonable doubt." Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, Robbery, § 2.60.10 (4th ed. 2018) ("Ga. Jury Instr."). The third and final element requires that a taking have been done *either* "by force, by intimidation, by the use of threat or coercion, by placing such person or another in fear of immediate serious bodily injury to himself/herself or another; or by sudden snatching."[4] *Id*. Under this instruction, a jury would not have to agree unanimously on which of the five statutory alternatives a defendant committed to return a conviction. *See Mathis*, 136 S. Ct. at 2248 ("Elements are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction.") (internal marks omitted). Instead, the jury need only agree that one of those means was employed. *See* Ga. Jury Instr., § 2.60.10. Thus, Georgia's jury instructions support a conclusion that the robbery statute enumerates different means of effectuating a taking, rather than alternative elements of functionally separate crimes. *See id*. at 2249, 2253.

Georgia case law interpreting the third element of robbery also supports this conclusion. Georgia courts have repeatedly emphasized that the "distinguishing

---

[4] The first two elements of robbery require that a taking occur: (1) with the purpose to commit theft; and (2) against the will of the person robbed. Ga. Jury Instr., § 2.60.10.

characteristic" of robbery—the "gist" of the offense—is the application of *some degree* of force to effectuate a taking. *State v. Epps*, 267 Ga. 175 (1996); *see also Franklin v. State*, 648 S.E.2d 746, 748 (Ga. App. 2007) ("Under [Ga. Code Ann. § 16-8-40], an essential element of all three methods of committing robbery is some form of force."). A taking "by force" requires "actual personal violence, a struggle and personal outrage." *Brown v. State*, 449 S.E.2d 136, 138 (Ga. App. 1994). The use of threats, coercion, intimidation or causing fear of immediate serious bodily injury constitutes "constructive force." *Nelson v. State*, 203 Ga. 330, 338 (1948); *Bankston v. State*, 424 S.E.2d 321, 322 (Ga. App. 1992). Finally, robbery by sudden snatching requires only the force "necessary to obtain possession of the property from the owner, who is off guard, and where there is no resistance by the owner or injury to his person." *Edwards*, 224 Ga. at 686. Taken together, these cases bolster the conclusion that the alternatives listed in Georgia's robbery statute describe different means of applying force to effectuate a taking.

In this respect, Georgia's robbery statute is similar to the Iowa statutes discussed in *Mathis*, which defined burglary as the entering of an "occupied structure" without permission and with intent to commit certain offenses therein, and separately defined the term "occupied structure" to encompass a number of different types of premises. *See Mathis*, 136 S. Ct. at 2250. In *Mathis*, the Supreme Court concluded that the Iowa burglary statute defined "one crime, with one set of

elements," including a single locational element that could be satisfied in multiple, alternative ways.[5]  *Id.*  The *Mathis* decision was based, primarily, on an Iowa Supreme Court holding that the alternative premises listed in the burglary statute were "alternative method[s]" of committing the offense, "so that the jury need not agree" on which location was burglarized.  *See id.*; *see also Gundy*, 842 F.3d at 1156, 1165.  The same is true here.  The Georgia Supreme Court has long held that the alternatives listed in the robbery statute are different "methods" of committing the offense.  *See Nelson*, 203 Ga. at 337.  In other words, Georgia's robbery statute defines one crime, with three elements, one of which specifies alternative means of effectuating a taking.[6]  *See Hogan*, 343 S.E.2d at 771-72; *Kilpatrick*, 618 S.E.2d at 720.

The Government argues that Ga. Code Ann. § 16-8-40 is necessarily divisible and comprised only of alternative elements because, historically, Georgia law

---

[5] The Eleventh Circuit applied a similar rationale in a pre-*Mathis* case, *United States v. Howard*, in concluding that an Alabama burglary statute was indivisible because it created one crime of burglary with, *inter alia*, a single locational element that encompassed different types of premises.  *See* 742 F.3d 1334 (11th Cir. 2014).

[6] The fact that the Iowa burglary statute enumerated the places that might be burgled in a separate statutory provision, while the Georgia robbery statute lists the elements of the offense and the alternative means of effectuating a taking within a single statutory provision, does not compel a different conclusion.  In *Mathis*, the Supreme Court also explicitly compared two hypothetical burglary statutes:  one that only used the term "premises," with no further elaboration to describe the locations that might be burgled, and another that enumerated possible locations, such as a house, a building and a car.  *See Mathis*, 136 S. Ct. at 2255.  The Court found this distinction irrelevant—both statutes included locations that were broader that in generic burglary and, thus, neither would constitute a predicate offense under the ACCA.  *See id.*

separated robbery into different grades that carried different penalties. The Government acknowledges that the Georgia legislature amended the robbery statute in 1968 to provide for a single penalty for the crime of robbery, but insists that "there is nothing to indicate that [this amendment was] in any way intended to disturb or change the fundamental differences between the different grades of robbery." *See* ECF No. 46 at 8. The Court disagrees. In the Court's view, revising the statutory scheme to reflect a single penalty signals a legislative decision that robbery, by any of the listed means, is fundamentally equivalent for penalty purposes. Notably, the Government has cited no precedential Georgia state court decision *after* the robbery statute was amended that characterizes the offense in terms of differing grades.

In sum, the Court concludes that Georgia Code Ann. § 16-8-40 defines a single crime of robbery and provides alternative "means" by which a person can effectuate the taking element. *Accord United States v. Jackson*, 713 F. App'x 172, 2017 WL 5514433 (4th Cir. 2017). Because the statute presents a single set of elements that are satisfied through various means, rather than multiple alternative elements of functionally separate crimes, the Court finds the statute is indivisible, such that the Court's inquiry is confined to the pure categorical approach. Applying the categorical approach, the Court has already found that the least of the acts criminalized by Georgia's robbery statute (*i.e.*, sudden snatching) does not require proof, as a necessary element, that the defendant "used, attempted to use, or

threatened to use" violent, physical force. Accordingly, the Court finds that Georgia's robbery statute does not qualify as a "crime of violence" under the elements clause of § 4B1.2.

### B. Enumerated Clause

Having concluded that Georgia's robbery statute is not a "crime of violence" under the elements clause, the Court now considers whether it qualifies under the enumerated clause. The enumerated clause specifically identifies robbery as a career offender predicate. *See* U.S.S.G. § 4B1.2(2). However, not all offenses labeled "robbery" in a state statute constitute robbery for Guidelines purposes. *See Mathis*, 136 S. Ct. at 2251 (stating that "the label a [s]tate assigns to a crime . . . has no relevance to whether that offense is an ACCA predicate"). Because Georgia's robbery statute is indivisible, a conviction under it can be a "crime of violence" for Guidelines purposes only if "the least of the acts [it] criminalize[s]"—again, sudden snatching—is "encompassed by the generic federal offense" of robbery. *See Howard*, 742 F.3d at 1345-46 (citing *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013)).

In the Eleventh Circuit, the "generic, contemporary" definition of robbery is "the taking of property from another person or from the immediate presence of another person by force *or* intimidation." *United States v. Lockley*, 632 F.3d 1238, 1244 (11th Cir. 2011). Under the generic approach, force means "an act of physical

harm, bodily injury, or violence," *see United States v. Johnson*, 665 F. App'x 788, 792 (11th Cir. 2016), and intimidation "in nearly all instances is the fear of bodily harm," *Lockley*, 632 F.3d at 1244. As has already been explained, Georgia robbery by sudden snatching can be committed without an act of physical harm, bodily injury, violence, or intimidation, *see supra*; thus, the robbery statute criminalizes "a broader swath of conduct" than the generic federal offense of robbery. *See Descamps*, 570 U.S. at 258. For this reason, the Court finds that Georgia's robbery statute cannot qualify as a "crime of violence" under the enumerated clause of § 4B1.2.

Based on the foregoing, the Court has found that Georgia's robbery statute does not qualify as a "crime of violence" under either the elements clause or the enumerated clause of U.S.S.G. § 4B1.2. Therefore, Cochran's robbery conviction under the Georgia robbery statute cannot serve as a career offender predicate under the Sentencing Guidelines. Having only one qualifying prior conviction (*i.e.*, possession with intent to distribute cocaine), Cochran cannot be classified as a career offender for sentencing purposes. Accordingly, Cochran's objection to the career offender classification is sustained.

**SO ORDERED**, on this 9th day of April, 2018.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**